The next case for today is 2019-40605, Hines v. Quillivan. Good morning and may it please the Court. Jeff Rose on behalf of the appellant, Dr. Ronald Hines. The lower court should be reversed and this case remanded on both the free speech and the equal protection claims. I'd like to focus on free speech and then we'll talk about equal protection at the end if I have a little bit of time. Do you think that NIFLA is enough to get us away from you having to go on bonk in order to prevail? Yes, Your Honor, absolutely, because this court in Hines 1 adopted the professional speech doctrine and adopted the sweeping conception of incidental speech that is part and parcel of the professional speech doctrine. And we know this because Hines 1 says so on its face right at the bottom of page 201. This court talking about this sweeping conception of incidental speech says, this principle is often linked to Justice White's concurrence in Loewe v. SEC, which this court acknowledged in Serafine a year later is the hallmark of the professional speech doctrine. And what's Justice White's takeaway on incidental speech? Quoting again, just at 202, the professional speech is incidental to the conduct of the profession, full stop. Not it might be incidental sometimes under certain facts or maybe it's incidental in this situation. It is by definition incidental if there is a generally valid conduct regulation. And that's why, excuse me, that's why Hines 1 is so short. It's just a few paragraphs. Hines 1 says we don't have to do an as-applied speech case. Hines 1 says, nor does the fact that this rule may have some impact on the veterinarian speech dictate a different result. In other words, we don't have to do what courts ordinarily do in as-applied free speech situations. And if we do a one-to-one comparison of Hines 1 and NIFLA, it's clear that NIFLA demolished the doctrinal foundations of Hines 1. For example, Hines 1 relies on the Fourth Circuit's Moore-King opinion. NIFLA expressly invalidates that. Hines 1 relies extensively on Justice White's concurrence. NIFLA rejects the circuit cases like Pickup and King v. Board of Governors that are based on Justice White's concurrence. Hines 1 relies on the Eleventh Circuit panel decision in Walschlager that says physicians don't have First Amendment rights in talking to their patients. NIFLA embraces the Eleventh Circuit en banc decision in Walschlager that says, no, physicians do have First Amendment rights. Hines 1 rejects humanitarian law project. NIFLA embraces humanitarian law project as an example of protecting the individualized advice of lawyers. And what's the takeaway then from NIFLA on incidental speech? NIFLA says, ordinary First Amendment rules apply to so-called professional speech. That doesn't mean the government can't regulate speech incidentally, but two things have to be present. Number one, there has to be conduct. Number two, the conduct and the speech have to be, and NIFLA says, tied to each other. In other words, they are inextricably intertwined. And when that happens, it might be, as in NIFLA's example of informed consent immediately prior to a surgical abortion procedure, you might actually have incidental speech there. But once the court grasps that the professional speech doctrine is finished and its sweeping conception of incidental speech is finished, then Dr. Hines' case is easy. Do you have any cases along the way that make this, what you're asking us to do, difficult for us? Have we said anything in the meantime, even in an unpublished case? No, no. Do you mean in the meantime since NIFLA? Since NIFLA. Have we said anything that would, you don't want to lead the court astray to end up in a problem or something. Of course not. So this court has not said anything specifically on NIFLA and the professional speech doctrine. There are cases that have worked themselves through, a few to the circuit level and other circuits in the Fourth Circuit and the Eighth Circuit. We cite one of the Eighth Circuit cases, which is Telescope Media. The Fourth Circuit case is called Capital Associated. That's 922 F. 3rd 198. And then there are a smattering of district court opinions on NIFLA, and one thing is consistently true. All of those cases dealing with so-called professional speech post-NIFLA apply a First Amendment analysis. They do not say, oh, this is speech, or oh, there's a general, I'm sorry, this is conduct, or there is a generally applicable conduct regulation, and then just stop. There is... So your doctor, your vet, all he does is speech because he doesn't actually physically handle or send medication or anything, right? Exactly. Under the allegations of the complaint, this is really easy for this court. Dr. Hines is just a kindly senior citizen, sitting in his den at home, exchanging correspondence with people who want to benefit from his lifetime of experience and knowledge and wisdom. Someone who's not a vet could do this, right? Yes, Your Honor. So he's being prohibited because he is a vet? He's being prohibited, well... Because he has to be filed with the professional norms. So the answer is maybe just a tad complicated, which is that Dr. Hines is a state-licensed veterinarian, and so they are applying the statute to him because he is already a veterinarian. It is quite possible that if someone were to do what Dr. Hines is doing, but they are not a licensed vet, that the state might say, well, you're engaged in the unauthorized practice of veterinary medicine. Right, they would. Right. And they can't just post on the internet specific medical advice to you, I'm not a doctor. Well, under the First Amendment, Your Honor, you could actually do that. And your speech, if you just posted on the internet and said, Mr. Rose, this is what I think you should do about your medical condition, under Walschlager, that speech is fully protected by the First Amendment. Even though... And what was your point about the veterinarian? Well, the point about the... You said you should give your dog vitamin C every morning based on the specifics, not just in general that vitamin C is good for dog, but your dog, blah, blah, blah, blah, blah. And so this is my recommendation. I can do that even though, because I'm not a vet? Yes. And so even if the state says... The state can't say I'm practically a vet, I'm a veterinarian without a license? The state can say it, but the point is that if you then came into court and said, I have a First Amendment defense, the state could apply the statute to you. It's just that it would have to satisfy some level of First Amendment scrutiny in order to tell you... It's in some counseling situation. I can't... But anyway, where they were allowed to do some general kind of thing that was something in mental health. Haven't we had that case? But go ahead. I'm sorry. That's okay. So my main point is that whether the government is applying the Practice Act to an unlicensed person or applying it to a licensed person, if that application operates in that situation as a burden on speech, then the government has to satisfy, as applied, a First Amendment standard. Now, it might be that in certain situations the government would prevail. We're here on a 12B6. We're not asking this court to render a final decision on the merits that the state violated Dr. Hines' right. We're just saying we're entitled post-SNFLA to go back down and have our First Amendment claim taken seriously. Right. So you're saying that it's not barred by Hines 1, which the district court felt constrained. Correct. Correct. The district court concluded that Hines 1 was really a case about incidental speech and that NFLA didn't disturb that. And what we're saying is that Hines 1 and NFLA both talk about incidental speech, but in Hines 1, it's Justice White's conception, which is that everything is incidental as long as there is a general conduct. Speech couldn't possibly be incidental in this case, could it? No. No. Not at all. Because Dr. Hines does nothing. But the question to me is a little harder than that. It's did NFLA versus Becerra overrule Hines? Because we're bound not just by stare decisis and law of the case and whatever else, but by our rules, that rule of orderliness, that we have to follow our prior precedent. And new Supreme Court cases that seem to send us in a different direction or seem to signal a change or a trend aren't enough. It has to either be an express overruling, which it isn't, or a clear overruling. So what is so clear about this overruling? What is so clear, Your Honor, is that NFLA unambiguously rejected the professional speech doctrine and the professional speech cases that form the basis of Hines 1. Hines 1 can't be fairly read anymore because all of its underlying decisions have been called into question, many of them directly. Moore King, for example, the 11th— I mean, NFLA didn't change the incidental burden on speech, and that is what Hines is relying on, rightly or wrongly, maybe wrongly, but rightly or wrongly is relying on the incidental. They add this thing about Justice White, but it's not solely that. They say states have powers to regulate professionals, they can regulate their conduct, that has an incidental effect on speech, too bad, and we're good to go. And NFLA says we're not addressing this incidental concept. So how can that be an overruling, is what they're saying? So I would respectfully disagree, Your Honor, that NFLA doesn't say we're not addressing the incidental question. What NFLA said is the professional speech doctrine is gone, and so what that means is ordinary First Amendment rules apply, including ordinary First Amendment conceptions of incidental speech, and for speech to be incidental under ordinary First Amendment principles, there must be conduct and the speech must be tied to it. Justice White's concurrence has a distinctly different conception of incidental speech, and I would point to the Court, because NFLA cited Humanitarian Law Project favorably, I would invite the Court to take a look at Holder again on page 28, where Chief Justice Roberts is assessing a statute preventing material support for terrorists, and the government took the position, while this generally operates as conduct, the speakers took the position that this suppresses our political speech, and Chief Justice Roberts said, the law here may be described as directed at conduct, but as applied to plaintiffs, the conduct triggering coverage under the statute consists of communicating a message, and so the question is whether the government may prohibit what plaintiffs want to do, provide material support in the form of speech, and that's what Dr. Hines wants to do, he just wants to speak to people, and I think Judge Elrod's common sense First Amendment intuition, there is just a gentleman sitting in his own den at home, having a conversation with someone around the country or around the world, that just feels like free speech, and what NFLA is saying is that the courts can no longer do this professional speech doctrine move, where you label what would appear to be speech as conduct, or as incidental speech, in order to take it outside the protections of the First Amendment, and so that's why we're asking the court to recognize that NFLA so thoroughly undermined Hines 1, that even under the rigorous rule of orderliness, Hines 1 has been abrogated, this case should be remanded to the district court, and Dr. Hines be allowed to litigate his First Amendment clause. And I assume that if the rule of orderliness did bar us, you would argue that it was nonetheless wrong after NFLA, and that the en banc court needed to fix it. That's certainly true, Your Honor. If the court, as you say, concludes that NFLA is binding, I'm sorry, that if Hines 1 is binding, I predict a very high probability of an en banc petition. Counsel, can you address the equal protection? This is more troublesome, because while one could argue that this gives short shrift to the rational basis analysis that the Abbey, the Monk case, gave not short shrift to in any way, we're stuck with this part of the opinion, aren't we? No, you're not, Your Honor. Tell us why not. Certainly. Because in 2017, two years after Hines 1 was decided, the Texas legislature enacted a new statute that allowed physicians to engage in telemedicine with their patients. Oh, so your class, your suspect class, you make the argument about the physician. So that wasn't present in the case before. Sorry. I understand, Your Honor. So the equal protection claim is completely new. So it's not the same old where they didn't have a suspect class, and they just gave it a one paragraph. You have a comparator, and you have a rational base. I mean, they may have a rational basis, but you're allowed to have an evidentiary challenge to that under the Monk case. That's correct. The Monk's case provides the court with a roadmap for rational basis analysis. And even acknowledging the deference that the government traditionally gets under the rational basis test, when the government's asserted justifications are kind of right out in that hinterland where they seem like they might be irrational, then courts say, all right, you get a chance to induce evidence to refute those asserted rationales. Because your argument, I mean, you would say it's plausible. It may not win, but it's certainly plausible to survive 12B and have to go to the next stage and let them, you come forward with why you think it's irrational and put forth everything, and they come forward with everything of what the basis of it was and why it's logical. That's exactly correct, Your Honor. And we just want the chance to be able to test what we think are the pretty attenuated justifications that the government has offered against a little bit of reasoning, either at the summary judgment stage or at trial. Okay. If there are no further questions from the court, I'll turn it over to my colleague, Mr. Green. Thank you. May it please the court. This is a stare decisis case. In Hines 1, this court upheld the state's physical examination requirement as a valid professional conduct regulation, despite its incidental burden on speech. You mean a rule of orderliness case? I think they're one and the same, effectively, but it's... Or law of the case. I think it... I'm sorry. Go ahead. I think they're effectively the same analysis, but it's that all these issues have been decided. In Hines 1, this court, far from unequivocally rejecting the reasoning of Hines 1, the Supreme Court has rejected the continuing validity of the incidental burden doctrine that was employed by this court. Well, I just looked it up. I mean, your opposing counsel suggested otherwise. But this isn't an incidental burden case, because the whole thing is speech. I take two points to that. It is an incidental burden case, because the statute at issue regulates the entire practice of veterinary medicine, the conduct and speech aspects. It says you can't do this until you've engaged in a physical examination of the animal. It's no different than any license requirement across every profession, including a law license. You can't engage in the conduct or speech components of the practice of law or the practice... Well, the law doesn't seem to be saying you can give legal advice if you're not a lawyer and claim First Amendment defense. I don't think that's what NIFLA says whatsoever. I mean... It's much bigger than what NIFLA versus Becerra was saying. I would agree with that. NIFLA is an entirely different content-based speech restriction. It's not at all. Right. Indeed, Your Honor. Every person that practices unauthorized, regulated professions would subject him or herself to it. But this vet is not having any conduct associated with these animals. I mean, unless you think turning on the computer is the conduct or some kind of acute argument like that. No. I mean, this veterinarian is reviewing medical records. He's evaluating conflicting diagnoses of other veterinarians. He's reviewing drug prescriptions. These are conduct elements of practicing veterinary medicine, and that's what you can't do without first examining the patient under Texas law. Do you dispute that the vet... I know you talked about a lawyer hypo, but do you dispute that someone could do this as a person who loves animals? Once you're evaluating specific animals and giving targeted veterinary advice, absolutely. That would be the unauthorized practice of veterinary medicine. So this Court needs to follow its holding in Hines 1 because, again, NIFLA reaffirmed the very doctrine that this Court used to uphold our laws. The Court should also reject Hines' equal protection claim because the state's differential treatment of medical doctors and veterinarians is rationally justified by differences between humans and animals. Do you get an evidentiary proceeding on that? No. I mean, as long as the Court can hypothesize a rational basis for the distinction, that is enough to uphold the law. It is not an evidence-based standard under a rational basis review. Counsel, can you point me to where you believe NIFLA says the doctrine regarding incidental speech is entirely in place in NIFLA? Because you tell us that NIFLA upheld the speech, but it did not say that the doctrine is the same anymore. So tell me where it says that the doctrine and analysis is exactly the same as what it used to be. In fact, it's new and different. I think if you look at pages—it looks like it's 2, 3, 7, 3 going from there in the opinion—again, the incidental burden doctrine was not at issue in NIFLA. It was passing on it and reaffirming it effectively and saying that—I mean, it had no occasion to narrow the incidental burden doctrine because what was at issue in NIFLA was a content-based speech restriction. In NIFLA, it was being challenged that required pregnancy centers to disseminate a specific state-crafted message about the availability of free abortion procedures. And the court said that that was subject to heightened First Amendment scrutiny. It rejected the Ninth Circuit's use of a lower form of scrutiny. But again, while it wasn't at issue, the court took pains to say that states may continue to regulate conduct despite incidental burdens on speech that the conduct may be associated with. And again, that was the precise holding of this court in Hines 1. But again, this is not an incidental burden on speech. It is a complete wiping out of his speech. Well, no different than any licensing requirement, it's not targeted at speech. The statute only says that you can't practice veterinary medicine, just like are, you know, statutes restricting persons from practicing law or practicing medicine or any other profession. You can't do the speech components of the practice without getting a license. Well, this requires a license and a physical examination. And again, the key point is that this court already upheld this, and NIFLA does nothing to overturn the basic analysis that this court engaged in using the incidental burden doctrine. Is the court wrong? No, the court was right. I mean, again— Tell us why. Because the statute is not targeted at speech. It's targeted at the practice of veterinary medicine in its entirety. And again, that includes certain— What about the as-applied argument? Well, again, Hines 1 rejected the as-applied claim, and there's no—nothing in NIFLA even talks remotely about as-applied. No, but why is that right? We didn't ask, are we bound by our—we already considered that. We're now looking at, did we make the right decision before? Yes, again, because— Because Dr. Hines does more than just speech. He's reviewing medical records. He's analyzing other veterinarians, conflicting diagnoses, and telling— He was just writing on the internet that dogs should be walked for 30 minutes a day. Y'all would not pursue it. That's correct. I mean, that's just— He reviewed FIDO's records and said FIDO isn't able to walk 30 minutes because FIDO has a leg injury, and what you need to do about the leg injury is this and that. That's the conduct, is the reviewing everything, and then the speech is incidental to that, giving the advice. That is correct. That's precisely right. The generalized advice that I can give or that you can give is not what's at issue here. It's the targeted advice after looking at records and reviewing conflicting diagnoses, reviewing conflicting drug prescriptions. I mean, these are not just speech components. That's why the as-applied challenge was properly rejected the first time around. And he charged for it, too. Pardon me? He charged for his review. Yes, he charged for his review, up to $50, so this is not something that you or I can engage in without a license. Now, Hines' effort to recast the physical examination requirement as a speech— We couldn't give advice? Not targeted at a specific animal after reviewing that animal's medical records. No, I mean, that would be the unauthorized practice of veterinary medicine. Again, Hines' effort to recast the physical examination requirement as a speech restriction is foreclosed by NIFLA. NIFLA did nothing to change this Court's conclusion— I don't think it's stare decisis, but anyway, it's a version of it, but I don't think it's technically stare decisis. But you're saying law of the case and rule of orderliness, right? Equally so. NIFLA did nothing to change the conclusion that the Court reached that the physical examination regulates conduct, not speech. NIFLA was about a statute, again, that was directed at the content of a pregnancy center's practice and required them to post a specific message. I mean, this couldn't be further from that. This is a general licensing requirement, much like a law license says, that you can't practice law before you meet the requirements of the law license. Okay. Can you talk about the equal protection, which is perhaps even more problematic? It needs to be rejected because the state's differential treatment of medical doctors and veterinarians is patently rational on its face. Again, Hines 1 already held that requiring a veterinarian to conduct a physical examination prior to treating that animal rationally promotes higher quality veterinary care. There's no suspect class that's at issue now. Texas now allows medical doctors to use telemedicine with human patients. It doesn't undercut the Court's initial holding that requiring the physical examination promotes better care. What do you do with the fact that the Abbey case says that they should have an opportunity to come forward with evidence to defeat the rational basis argued by the state? That you don't just get to say, motion to dismiss granted. You have to actually go to the next stage where they are plausible, and that even where you do have a rational stated reason, they can still be plausible under our binding precedent. I think the Court rejected all of the rationales offered by the state and any that it could hypothesize as patently irrational because the statute at issue was ... What court? This court in St. ... I'm sorry, the name of the case again. The case that you were just referring to. In the Abbey case. In the Abbey case, yes. It said that we can't hypothesize a rational basis at all for this classification, but here it's very different. No, they said in that case that even where the state does proffer a rational basis ... I have it here. The other side gets to come forward and say why it's not rational. It says that in the opinion. I think there are many other Fifth Circuit opinions. It wasn't evidentiary. It was looking at ... I mean, I was ... It says evidentiary. In the opinion. At the statute and what it covered and why that didn't make sense. It's not an evidence-based standard. I mean, I don't remember that case alluding to evidence. The cases we cite and I think the accepted law is that it has to be patently irrational on its face, the statute. And in this case, the differential treatment between medical doctors and veterinarians is easily and rationally explained by the fact that human patients are able to communicate about their own symptoms via phone or email, at least in most cases, whereas animals obviously cannot do that. I'm reading from the opinion at page 223. As the Abbey points out, although rational basis review places no affirmative evidentiary burden on the government, plaintiffs may nonetheless negate a seemingly plausible basis for the law by adducing evidence of irrationality. But you cannot adduce evidence if you don't have a chance to get to summary judgment. That's correct, but I think that statement is out of step with all the Fifth Circuit cases that we cited that said that it has to be patently irrational on its face to move forward. And it's not an evidence-based standard. But this case says that the government is not patently irrational. It says all the chosen, it says our analysis does not proceed with abstraction for hypothesized ends and meant to do not include post-hoc hypothesized basis. And then they examine the state board's rationale. And it's not patently irrational. It doesn't have to be patently irrational in order for the other side to get to step in. Well, I think that if that were the case, then I mean, there's a lot of other precedent that that would be overturning, because I think these get decided on motions to dismiss all the time. There are cases where they don't because the state's justification is patently irrational and the court can't hypothesize any rational basis for the statute. Why do people get less protection than animals under the Texas law? It's just different. I mean, people, Texas chose to expand access to care for humans through electronic means. But again, humans are able to communicate in most cases on their own about their own symptoms via the phone or email. An animal can't do that. And that is a rational basis alone for the distinction between animals and humans. I want to clarify. In Abby, there was a trial because there was a seeking and injunction. There was a trial on the injunction. But we nowhere said that you can never dismiss a case that's claiming equal protection. That would be a huge change in the law. This was dealing with the evidence that was presented because the district court granted the injunction. And so we were reviewing that. So that's the context in which we were talking about the evidence because the plaintiffs were seeking an injunction. Thank you. I appreciate that. And that's what happened. But the case will speak for itself, too, as to whether it says that or not. Sure. I mean, I think these equal protection and rational basis claims get dismissed on 12b6 grounds regularly. And the only way that a plaintiff can get past it is to show and convince a court that there is no hypothetical even rational basis for the distinction that the statutes are making. And again, here, it's patently rational that animals and humans are different when it comes to their ability to communicate about their own symptoms. And even where humans cannot, like a baby, again, you have a parent that's likely communicating by the phone who's going to be more familiar with the human symptoms than a human normally is with animal symptoms. And that is the rational basis for the distinction between the two statutes. If there's nothing further, the court should affirm that the— Is that rational basis made just in your arguments in the case? Yes. You just do it on the briefs. There's no distinction that the legislature made or the regulatory bodies— It doesn't need to be the legislature. No, but I'm just confirming that it's only arguments that you've made here in the case, correct? Correct. Or that the court could hypothesize. I mean, it's even the court's obligation— I understand that we can do that. I'm asking if there's anything else in the record to support that. Well, again, the record supports that Texas wanted to expand access to care for human patients, and it's chosen not to make that same experiment when it comes to animals so far. But one of the questions, Judge Elrod, what I'm picking up from that is there's nothing you're familiar with in the adoption of that expansion that identified veterinary medicine as being different. The legislature itself did not articulate some reason. I don't think they— I'm not asking whether they needed to or whatever. I'm just asking, did they do anything I'm not aware of anything. There was no basis rejected in the context of it. There isn't any indication the legislature even thought about it. No, that's— It's not like they were making a difference between humans and animals. No, not that I'm aware of. They weren't changing the veterinary statute or even looking at it. They were looking at the human statute. That's correct. They changed that. And so we don't even know if they were faced with somebody actually, you know, if this veterinarian went to the legislature and said, y'all need to change that law. We don't know what they'd do with that. That's correct. So if there's nothing further, the court should affirm on the basis that precisely following the district court's holding, because they got it exactly right, they should dismiss the case. Thank you. Thank you. Do you have anything further? Yes, Your Honor. A few quick points. In response to Judge Haynes' concerns about whether or not NIFLA just affirmed the same doctrine as in Hines 1, that just isn't correct. And I would encourage the court to take a look at Justice Breyer's dissent at 2385. And Justice Breyer says, what is everybody talking about? These clinics have physicians, OBGYNs, anesthesiologists, sonographers. They're engaged in lots of actual conduct. And the disclosure is just when people come in the door and you've got to give them this disclosure before they engage in this. And if Hines 1 is right, then all NIFLA had to say in incidental speech is, there is a valid medical practice act. There is a valid sonographer act. And therefore, all speech by any of these professionals in this clinic is incidental. NIFLA didn't say that. It said, you have to look at the incidental speech analysis not with reference to this general practice act. You have to look what's going on. And what's going on in that case was no connection between any of the conduct that those licensed professionals can do and the actual speech. Let me ask you on this equal protection. Is it your position that after the Abbey case going forward, in every case where somebody makes an equal protection claim, there needs to be a trial on the rational basis for the equal protection? No. No, Your Honor. Not by definition. What evidence is it that you wanted to present and were unable to? So, for example, we have allegations in the complaint that the situation with the government arguing that, for example, restricting veterinary telemedicine will prevent zoonotic disease. For example, like rabies, a disease that jumps from an animal to a human. And given that the Texas legislature says that human telemedicine is okay, and the greatest danger is the transmission of disease from human to human, it is not rational to believe that telemedicine causes diseases to spread, and therefore we can't... You can make this argument without holding it in line. I mean, you're making this argument on the face of it, much like they did in the Abbey case. The reason they had a proceeding there was because they were seeking an injunction. But the actual evaluation that gave rise to the problem was that the statute simply didn't make any sense in this context of the monks trying to make coffins. So I would just very respectfully suggest to Your Honor that might not be quite right. I was on the monks' case, and so Judge Duval... We had initially had a preliminary injunction, but Judge Duval just merged that with a final trial. And so the injunction that the court entered was not a preliminary injunction. It was a permanent injunction. But we were not dealing with a dismissal case and saying you can't dismiss. We have a lot of cases where we find equal protection is an invalid claim and affirm dismissals. So your argument that the Abbey case, which wasn't even dealing with that, would somehow overrule all of those, which we're not even able to do even if we tried to, I don't understand that. That's what I'm trying to say. I understand. Excuse me. I understand, Your Honor. So what we're suggesting is that the Abbey case represents the proper approach to rational basis analysis as reflected in the substantial string sites of cases from the Supreme Court and the Fifth Circuit in which plaintiffs have prevailed in the end. And we're saying that you don't get discovery and to go to trial or to summary judgment just by definition, just by virtue of bringing this claim. But what we're saying is when the government's asserted justification at the 12B6 stage is that maybe Texas legislators want babies to have more access to care but less quality and want puppies to have less access to care, but when they get it, boy, we want it to be even better. The rational basis is irrational, which was the case in Abbey. That's the core of the ruling in that case is that the Abbey statute, as applied to the monks, was irrational. So that's your argument here is that it's irrational to say kind of we're going to protect pets more than humans, and you can make that argument with or without a trial or evidentiary proceeding. We could, Your Honor, if the government were to stipulate the facts, for example, because we're just on a 12B6. We have factual allegations that need to be presumed true. If this court remanded back to the trial court and I sat down with Mr. Green or one of his colleagues and said, okay, were you willing to stipulate to the facts, and we can just have a legal argument about whether or not or we might say we disagree about these facts. So what rule you think applies to the question of when we're evaluating an equal protection claim on a motion to dismiss, at what point do you have to go past the motion to dismiss? Because I simply do not agree that our law is we always have to have a hearing on motions to dismiss in equal protection claims with evidence. What takes you past that? Okay, what takes you past that is when the justifications that the government asserts and that the district court credits in dismissing your claim are not within the zone of plausible legislative discretion but have crept outside it. So this starts to really look irrational. So when the government is saying we want to protect puppies more than babies effectively, that is outside the zone of plausible rational policy. I don't believe that there's anyone in Texas, any legislator that says I really don't want babies and worried mothers to have access to telemedicine, but I don't know how to write this statute otherwise, so I'm grudgingly going to tolerate it for babies even though they can't talk. Also, you're an advocate in doing the best you can. There's a whole lot more plausible reason that they came up with than they want to protect babies less than animals. And I really think that's where we'll be in deciding whether you get an evidentiary hearing and not, with all due respect, what you just announced there. Thank you. I have a question. Yes, Your Honor. Do we need to wait for this Vizalene case? Maybe do you? Are they? It's a state. Oh, no, it's not Texas. It's Mississippi. It's Mississippi, and so the Vizalene case was argued about three months ago. Right. Does this depend on the same thing? There is an abrogation argument in the Vizalene case, and if the Vizalene panel renders its opinion before this court and that panel just says no, NIFLA doesn't abrogate Hines 1. But the same argument about NIFLA abrogating, it was made there. That's right. It has a NIFLA argument. Does it have a different factual basis, though? It's completely factually different. That involves a surveyor statute in Mississippi, and whether or not using a computer to create graphical renditions of meets and bounds constitutes speech or conduct. And so if the court finds that it doesn't need to reach the abrogation question but says that Vizalene would lose, for example, even if the First Amendment applied, that would have no effect on this panel's decision here. Thank you. Thank you, Your Honor. This case is submitted. We appreciate the arguments of counsel.